1                    UNITED STATES DISTRICT COURT

2                     SOUTHERN DISTRICT OF TEXAS

3                       CORPUS CHRISTI DIVISION

4   UNITED STATES OF AMERICA            .
                                        .   Criminal Action
5   VERSUS                              .   No. C-17-CR-146
                                        .
6   MONICA ROCA-PEREZ,                  .   Victoria, Texas
                                        .   July 19, 2017
7                                       .   1:32 p.m.
                          Defendant.    .
8   . . . . . . . . . . . . . . . . . . .

9                      TRANSCRIPT OF PROCEEDINGS

10                BEFORE THE HONORABLE JOHN D. RAINEY

11                          REARRAIGNMENT

12  APPEARANCES:

13  FOR THE UNITED STATES OF AMERICA:

14
            Ms. Julie Hampton
15          Assistant United States Attorney
            UNITED STATES ATTORNEY'S OFFICE
16          800 North Shoreline Boulevard
            Room 500
17          Corpus Christi, Texas  78401
            361.888.3111
18          FAX:  361.888.3200
            julie.hampton@usdoj.gov
19
    FOR THE DEFENDANT:
20
            Mr. Heriberto Medrano
21          ATTORNEY AT LAW
            2009 East Harrison Avenue
22          Suite B
            Harlingen, Texas 78550
23          956.428.2312
            edmedrano@mac.com
24
            PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
25     TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

```
 1   INTERPRETER:

 2           Ms. Ana Maria Paredes

 3

 4

 5

 6

 7

 8   COURT REPORTER:

 9           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8016
10           Houston, Texas   77002
             713.250.5582
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    PROCEEDINGS
 2                   July 19, 2017
 3          THE COURT:  All right.  Before the Court this
 4  afternoon is C-17-146, United States of America versus Monica
 5  Roca-Perez.
 6               If you'll make announcements, please
 7          MS. HAMPTON:  Julie Hampton on behalf of the United
 8  States, your Honor.
 9          MR. MEDRANO:  Your Honor, good afternoon.  Heriberto
10  Medrano for Ms. Roca-Perez.  We're present and ready to proceed,
11  Judge.  May I have my client sit next to me?
12          THE COURT:  I'm sorry?
13          MR. MEDRANO:  We're present and ready to proceed.  Can
14  I have her sit --
15          THE COURT:  Sure.
16               We previously had a pretrial conference in this
17  matter where we discussed various issues; and in preparation for
18  the conference today, I've been handed some documents that
19  indicate that you have been successful, it looks like, in trying
20  to work out a resolution of this matter.
21               There were a lot of issues pending that we
22  discussed before.  What I was handed was a criminal information
23  which appears to have been filed.
24               And Ms. Hampton, do you want to, basically, bring
25  me up to date on where we stand on this matter at this time?
```

01:32:27   5
01:32:37   10
01:32:46   15
01:33:06   20
01:33:25   25

1          MS. HAMPTON:  Yes, your Honor.  We have worked out a

2   plea agreement to present to the Court where this Defendant will

3   plead to -- it's, basically, a lesser included offense which is

4   unlicensed money transmitting business under Title 18, Section

01:33:42   5   1960.  And we have a plea agreement to present to the Court

6   regarding that and a short factual basis.

7          THE COURT:  Okay.  All right.

8          MR. MEDRANO:  That's correct, your Honor.

9          THE COURT:  Very well.  Okay.  Let me get things

01:33:54   10   organized here, and we'll proceed.

11          All right.  Mr. Medrano, if you would bring your

12   client up to the table here in front of the bench, we'll proceed

13   from there so that everyone can be heard adequately.

14          Should I refer to you as Roca-Perez?

01:34:51   15          Is that correct, Ms. Roca-Perez?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Very well.  When we undertake to conduct a

18   proceeding like this, there's a procedure that must be followed,

19   of course.  I want to make sure that whatever you're doing,

01:35:15   20   you're doing voluntarily and that you're competent to do it and

21   so forth; and I know that your attorney has explained this to

22   you.

23          We start off by having you placed under oath.

24   It's important that you be candid with the Court and truthful.

01:35:26   25   But because you will be under oath, if you testify falsely

1   during the proceeding, that testimony could later be used

2   against you to obtain a criminal indictment for perjury or for

3   making a false statement.

4                    Do you understand that?

01:35:37   5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Okay.  This lady is going to administer

7   the oath to you.  If you will do the best you can to raise your

8   right hand.

9       (The Defendant was sworn and testified through an

01:35:47  10   interpreter.)

11            THE COURT:  Let me go through a few preliminary

12   questions with you concerning your competence.  Has a doctor

13   ever diagnosed you with any type of mental illness?

14            THE DEFENDANT:  No, your Honor.

01:36:09  15            THE COURT:  Have you been a heavy user of any type of

16   narcotic drugs?

17            THE DEFENDANT:  No, your Honor.

18            THE COURT:  Have you taken any type of medication

19   recently that would cause you to be confused at this time?

01:36:24  20            THE DEFENDANT:  No, your Honor.

21            THE COURT:  How old are you?

22            THE DEFENDANT:  Forty-eight, your Honor.

23            THE COURT:  I was handed a sentence data sheet.  It

24   appears that it lists your citizenship as the United States.

01:36:46  25                    You're not a United States citizen, are you?

1      THE DEFENDANT:  No, your Honor.  I am a Mexican.

2      THE COURT:  Mexico?  Okay.  All right.

3            Did you go to school in Mexico?

4      THE DEFENDANT:  Yes, your Honor.

01:36:56  5      THE COURT:  How far did you go?

6      THE DEFENDANT:  University, your Honor.

7      THE COURT:  Okay.  What was your degree in?

8      THE DEFENDANT:  Attorney.

9      THE COURT:  Okay.  All right.  We're on the same page.

01:37:15  10           You were indicted in this case by a grand jury,

11  and that's in the cause number that I previously called, the

12  C-17-146.  Now, what I've been advised of today is that you're

13  going to proceed pursuant to a criminal information; and that,

14  of course, will have a different cause number once it's been

01:37:39  15  given one.

16           But I need to go over a couple of things with you

17  before we proceed.  The charge set forth in the criminal

18  information that was presented to me, of course, is a felony

19  offense; and under our law, you have the right to have these

01:38:01  20  charges and allegations presented to a grand jury and to have

21  the grand jury issue an indictment of this crime instead of

22  proceeding by criminal information.

23           Do you understand that you have the right to be

24  indicted by a grand jury instead of just proceeding by criminal

01:38:20  25  information?  The criminal information is filed, basically, by

1   the US Attorney's Office.  They allege what the crime has been

2   and they sign it and they file it, and that is the criminal

3   information.  That's much different than an indictment.

4                  Do you understand that?

01:38:33   5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Much different than an indictment issued

7   by a grand jury.  Okay.  All right.

8                  Have you discussed this right with your attorney,

9   the right to be indicted by a grand jury on these charges?

01:38:46   10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you have any questions you want to ask

12   me?  Is there anything about that process that you don't

13   understand?

14          THE DEFENDANT:  No, your Honor.

01:38:56   15          THE COURT:  Knowing your rights in that regard -- I

16   was handed a waiver of indictment that appears to have been

17   signed by you.  Is that your signature on the waiver?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Okay.  And your attorney signed it, also.

01:39:10   20                  So, you are asking me to -- that you want -- that

21   you want to waive your right to be indicted and to proceed by

22   criminal information; is that correct?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Okay.  All right.  And do you understand

01:39:25   25   the charge set forth in the criminal information?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  All right.  No one has forced you

3   to proceed in this matter, have they?

4          THE DEFENDANT:  No, your Honor.

01:39:40   5          THE COURT:  All right.  Having advised you of the

6   nature of the charge filed by the criminal information, finding

7   that you have discussed it with your attorney, that you appear

8   to know your rights as far as being indicted by a grand jury, I

9   find that you knowingly and voluntarily waive the right to

01:40:07   10  prosecution by indictment before the grand jury; and I'll allow

11  you to proceed under the criminal information.  I'll sign the

12  waiver at this time.

13          I should have asked you this before but I will at

14  this time:  You have received a copy of the criminal

01:40:24   15  information, haven't you?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Okay.  All right.  Did you read it?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Or did your lawyer read it to you?

01:40:31   20          THE DEFENDANT:  My attorney read it to me.

21          THE COURT:  You discussed it with him?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you feel like you completely understand

24  the charges set forth in the criminal information  --

01:40:41   25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  -- to the one count information?

2                All right.  Mr. Medrano has been representing you

3  in this matter.  Are you satisfied with his representation?

4          THE DEFENDANT:  Yes, your Honor.

01:40:53   5          THE COURT:  Okay, very well.

6                Do we have a signed copy of the plea agreement?

7  I need to ask her some questions about that.

8          MS. HAMPTON:  Your Honor, I omitted the cause number,

9  since it doesn't have a cause number yet, on the plea agreement,

01:41:16  10  just for the Court's information.

11          THE COURT:  Okay.  All right.  Okay.

12          MR. MEDRANO:  Your Honor, I think it's important for

13  the record to reflect that she does have an interpreter

14  translating things to her in English --

01:41:24  15          THE COURT:  Okay.

16          MR. MEDRANO:  -- and Spanish.

17          THE COURT:  Okay.  Let me go over one other thing

18  before we talk about this plea agreement.  As I just mentioned,

19  the charge in the criminal information is a felony offense.

01:41:39  20  Since you are a citizen of Mexico, if I accept your plea and

21  you're found guilty of that felony, you are subject to being

22  deported.

23                Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

01:41:51  25          THE COURT:  Have you previously discussed the possible

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    consequences of deportation with your attorney before deciding

2    to enter this plea?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And are you satisfied with the

01:42:06  5    representation you've received from your attorney up to this

6    point?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Okay, very well.

9              I want to make sure that no one has forced you to

01:42:17  10   enter into this plea agreement.  So, let me ask you this:  Did

11   you sign your agreement voluntarily?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  No coercion was exerted on you?

14             THE DEFENDANT:  No, your Honor.

01:42:31  15             THE COURT:  Did your attorney read it to you or did

16   someone else interpret it for you?  It's in English.

17             THE DEFENDANT:  Yes, your Honor.  My attorney did.

18             THE COURT:  And you discussed it with him?

19             THE DEFENDANT:  Yes, your Honor.

01:42:44  20             THE COURT:  He answered any question you may have had

21   about it?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you feel like you understand the terms

24   of this agreement?

01:42:54  25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Has anyone promised you anything to get

2  you to plead guilty other than the promises contained within

3  this agreement?

4          THE DEFENDANT:  No, your Honor.

01:43:07  5          THE COURT:  Let me check a couple of things in it

6  first.

7              No waiver in the agreement, right?

8          MR. MEDRANO:  That's correct.

9          MS. HAMPTON:  That's correct, your Honor.

01:43:41  10          THE COURT:  All right.  I just want to make sure.

11          All right.  Let me go to the penalty range you're

12  subjecting yourself to by entering a plea to these charges.  You

13  could be sentenced to the maximum punishment provided by law

14  which is up to five years in prison.  You could be fined up to

01:44:00  15  $250,000, placed on supervised release for up to three years;

16  and there is also a $100 special assessment that will be

17  imposed.

18          Do you understand that that is the penalty range

19  for this offense?

01:44:16  20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Okay.  Should you be placed on

22  supervision, you'll have to follow a set of rules adopted by

23  this Court.  Should you violate any of those rules, after notice

24  and a hearing is held, the judge presiding over your case at

01:44:35  25  that time could order that you serve some additional time in

1  prison even though you've already completed the initial sentence

2  that I impose.

3           Do you understand the possible consequences of

4  violating supervised release?

01:44:48  5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Okay.  I want to go over with you the

7  sentencing procedure that we follow in this court.  Some of the

8  -- your sentencing date, obviously, may change subject to

9  further developments in this case; but we start off by having a

01:45:07  10  probation officer prepare a presentence investigation report.

11           It contains an awful lot of information about you

12  and about this offense which I will use in determining what I

13  believe to be a sufficient sentence for you.  It will be

14  prepared in accordance with the United States Sentencing

01:45:23  15  Guidelines.

16           Have you had an opportunity to discuss the

17  guidelines with your attorney and how they may apply to your

18  case?

19           THE DEFENDANT:  Yes, your Honor.

01:45:33  20           THE COURT:  When the report is prepared, it will be

21  delivered to Mr. Medrano.  He'll bring it to your attention.

22  Again, it will be in English.  So, make sure he reads it to you

23  carefully, explains things to you and answers your questions;

24  and point out anything you believe is in the report that is

01:45:51  25  incorrect.  If necessary, he will file objections for you.

1          A probation officer will attempt to resolve them;

2    but if they cannot, they will be presented to me; and I will

3    rule on your objections at your sentencing hearing.  Once I've

4    made any necessary rulings, an advisory guideline range of

01:46:15   5    incarceration will be established for your case; and it's

6    usually expressed in a range of months.

7          I'm going to give you an example, say, 24-to-30

8    months; but I have no idea what that range will be until the

9    report has been prepared.  And even though that range of

01:46:27  10    incarceration is advisory, I must carefully consider it when I

11    determine what I believe to be a sufficient sentence.

12          There are only limited circumstances under which

13    you or the Government can appeal the sentence that I give you,

14    and I advise you at this time that there is no parole in our

01:46:44  15    federal penal system.  If the sentence I give you is worse than

16    you're expecting, you're not going to be allowed to change your

17    mind and withdraw your plea of guilty for that reason.

18          Do you understand all of that?

19          THE DEFENDANT:  Yes, sir.

01:46:58  20          THE COURT:  Any questions you want to ask me about it?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  You, obviously, have a right to a trial by

23    jury.  You have a right to be represented at that trial by a

24    lawyer such as you have representing you here today.  During the

01:47:17  25    course of the trial, your attorney has the right on your behalf

1  to cross-examine each and every witness called by the Government

2  to testify.

3         And once the Government rests its case in chief,

4  you have the right to call witnesses to testify for you and to

01:47:30  5  have them subpoenaed if they do not want to come to court.

6  Then, you have an election to make during the trial.  You can

7  elect to testify if you want to, but you also can choose not to.

8         If you elected not to testify, the Government

9  cannot call you as a witness and subject you to interrogation.

01:47:52  10  Also, to, hopefully, avoid any potential prejudice from you not

11  testifying, I would instruct the jury that the fact that you did

12  not testify is not evidence which it is allowed to consider when

13  it later renders its verdict.

14         In a moment, I will ask you how you plead to

01:48:07  15  these charges; and at that time, if you enter a plea of guilty,

16  you will have waived your right to a trial by jury as well as

17  the other rights I described.

18         Do you understand all that?

19         THE DEFENDANT:  Yes, your Honor.

01:48:19  20         THE COURT:  Let's go over the elements of the offense.

21  This is what the Government must prove beyond a reasonable doubt

22  to obtain a conviction for this charge.  The Government must

23  establish that you, the Defendant, knowingly conducted,

24  controlled, managed, supervised, directed, or owned all or part

01:48:35  25  of a money transmitting business; that that business affected

1  interstate or foreign commercial in some manner or degree.

2          And then, the Government must establish that

3  while failing to comply with the money transmitting business

4  registration requirements under 31, USC, Section 5330 or

01:49:02  5  regulations prescribed under that section that the business that

6  you operated failed to do that.

7          Do you understand the elements of this offense?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.

01:49:10  10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Ms. Hampton, representing the Government,

12  is going to attempt to explain to me the evidence which she

13  believes she could present to support a conviction for this

14  offense.  If you would, listen carefully.

01:49:26  15          Ms. Hampton, would you tell us about this case,

16  please.

17          MS. HAMPTON:  Yes, your Honor.

18          At trial in this case, the Government would prove

19  through legal and competent evidence that information was

01:49:37  20  received by the FBI McAllen agency which indicated that certain

21  individuals using a business by the name of PCR Consulting, LLC

22  -- and I'll refer to it as PCR from here on out --

23          THE COURT:  Okay.

24          MS. HAMPTON:  -- was based in Hidalgo, Texas, and had

01:50:00  25  defrauded investors.  Multiple victims were identified and were

 1   found to have been defrauded for a total amount of $800,000.

 2                  PCR was established as a business entity on

 3   October 29, 2008, when it officially filed with the Texas

 4   Secretary of State.  The paperwork filed with the Texas

 01:50:19  5   Secretary of State listed Cindy Apac, Juan Antonio Perez Cantu,

 6   and Monica Roca-Perez as directors and managing members for PCR.

 7   There's one additional person, as well.  So, there were four

 8   managing members for PCR.

 9                  PCR was established for the business purpose of

 01:50:36  10  providing consultation services to Mexican investors who wanted

 11  to establish US companies and/or obtain investor visas.

 12                  PCR also provided document notarization services,

 13  rentals of PO boxes, and referrals for accounting and legal

 14  services.  PCR, however, was not licensed to sell financial

 01:51:03  15  investments or to provide financial consultation services.

 16                  Juan Antonio Perez Cantu and Cindy Apac, both of

 17  whom are charged in the Corpus Christi division -- Ms. Apac has

 18  been convicted and is awaiting sentencing -- used the entity of

 19  PCR to solicit, obtain, and defraud victims in the US.

 01:51:25  20                  Additionally, the Defendant in this case,

 21  Ms. Roca-Perez, used the entity's bank accounts with the help of

 22  Juan Antonio Perez Cantu and Cindy Apac to receive, convert into

 23  US dollars and deposit and transfer money from Mexico into

 24  various banks in the US, including accounts owned by Juan

 01:51:48  25  Antonio Perez Cantu, Cindy Apac, Ms. Roca-Perez, and Adriana

1   Gonzalez.   Adriana Gonzalez is the former wife of the former

2   governor of Tamaulipas, Eugenio Hernandez.

3                     All of the banks involved were FDIC-insured

4   banks.   Multiple times defrauded investors deposited hundreds of

01:52:12   5   thousands of dollars into PCR's bank accounts only to discover

6   that they had later been the victims of a Ponzi-type scheme.

7   Their monies were used to pay off prior investors.

8                     In fact, approximately $250,000 of those monies

9   were deposited into Ms. Roca-Perez's bank account.   Further,

01:52:33   10   Ms. Roca-Perez directly received $262,944.63 in three identified

11   victims -- directly from three identified victims traced to

12   Ms. Roca-Perez's account.

13                     That's the amount listed in the plea agreement as

14   restitution, your Honor

01:52:50   15              THE COURT:  All right.   Okay.

16              MS. HAMPTON:  What gives rise to this criminal charge

17   against Ms. Roca-Perez is that the FBI investigation revealed

18   that a substantial amount of money was being transferred from

19   Mexico through PCR bank accounts to be finally transferred and

01:53:09   20   deposited in various individual's US bank accounts all without a

21   license to do so, in violation of Title 18, Section 1960.

22                     At trial, the Government would be able to prove

23   through the testimony of several now cooperating individuals, as

24   well as the use of bank documents and the use of e-mail

01:53:29   25   communications, that Ms. Roca-Perez and others used this

1  unlicensed transmitting of money scheme to cause the transfer of

2  hundreds of thousands of dollars from Mexico into her own US

3  bank accounts with the purpose of then transferring

4  approximately $654,000 into US bank accounts owned by Adriana

01:53:53  5  Gonzalez.

6         That amount, your Honor, is -- the 654,000 is the

7  amount used to justify the base offense calculation in the plea

8  agreement, as well.

9         THE COURT:  Okay.  All right.

01:54:05  10        MS. HAMPTON:  Ms. Roca-Perez moved the money at the

11  direction of Ms. Gonzalez for a small profit.  Those accounts

12  then went to fund CDs, or certificate of deposits, that Adriana

13  Gonzalez used to back loans for the purchase of real property in

14  the US that are the subject of US Government forfeiture actions.

01:54:31  15        An example of this money movement occurred in

16  December of 2009 when e-mails, bank documents, and witness

17  testimony would prove that Monica Roca-Perez had received and

18  transmitted approximately $300,000 of Adriana Gonzalez's money

19  from Mexico into the US using Juan Antonio Perez Cantu, Cindy

01:54:54  20  Apac, and the PCR accounts.  The goal was to ultimately deposit

21  these monies into Adriana Gonzalez's US bank accounts.

22        The e-mail reflects that Ms. Roca-Perez was

23  questioning Cindy Apac as to why only $285,000 were deposited

24  into Ms. Gonzalez's bank account when she had delivered 300,000

01:55:17  25  US dollars worth of Mexican pesos to Mr. Perez Cantu.

1           Ms. Roca-Perez was questioning the absence of

2  $15,000 and told Ms. Apac that it was a lot of money, it wasn't

3  a small amount of money and that she had to account to

4  Ms. Gonzalez for that money.

01:55:35   5           There were several e-mails between Ms. Roca-Perez

6  and others reflecting the fact that the majority of the monies

7  transmitted and transferred belonged to Adriana Gonzalez and

8  were done for her benefit.

9           Neither PCR nor Ms. Roca-Perez or any other of

01:55:50  10  the co-conspirators involved in this case were ever licensed

11  with the State of Texas or the US Department of Treasury to

12  legally operate a money transmitting business.  Those are the

13  facts in this case, your Honor.

14           THE COURT:  Very well.

01:56:02  15           Ms. Roca-Perez, did you hear and follow what

16  Ms. Hampton said about your involvement in this matter?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Is it correct?

19           THE DEFENDANT:  Yes, your Honor.

01:56:15  20           THE COURT:  Okay.  To the charges in Count 1 of the

21  criminal information, how do you now plead, guilty or not

22  guilty?

23           THE DEFENDANT:  Guilty, your Honor.

24           THE COURT:  All right, thank you.

01:56:31  25           Ms. Roca-Perez, I first find that you're

1  competent to enter a plea.  It appears to me that you are aware

2  of the nature of the charges against you and the consequences of

3  entering a plea to those charges.

4            I, therefore, find that your plea is a knowing

01:56:47  5  and voluntary plea supported by an independent basis in fact

6  containing each of the essential elements of the offense.  Your

7  plea is accepted, and you're now adjudicated guilty of the

8  charges in Count 1.

9            I'm looking for -- here it is.  Let's see, I got

01:57:04  10  two.

11            THE CASE MANAGER:  One with a number and one without

12  just in case.

13            THE COURT:  I'm going to sign an order that will set

14  forth a schedule for your sentencing, and I know it's likely --

01:57:15  15  subject to maybe being changed.  I don't know.

16            MR. MEDRANO:  Actually, your Honor, if I may, Judge,

17  we would ask for an expedited PSR report.

18            THE COURT:  Okay.

19            MR. MEDRANO:  We believe that there's -- because of

01:57:26  20  the -- let me explain to the Court:  My client is a Mexican

21  national, your Honor --

22            THE COURT:  Right.

23            MR. MEDRANO:  -- not residing in the US.  She's not a

24  resident alien.  As I explained to the Court earlier at prior

01:57:37  25  hearings, she came into the US legally with a tourist visa

1  visiting her son who was in college up in California; and so,

2  spotless record in Mexico, no issues here in the United States.

3  We believe and ask that an expedited PSR report be prepared,

4  Judge, because I think we're ready to go ahead and proceed.

01:57:56  5           She knows that when she's sentenced and she

6  completes whatever term of imprisonment the Court rules on her

7  that she will be deported.

8           THE COURT:  Okay.

9           Any disagreement with that, Ms. Hampton?

01:58:08  10           MS. HAMPTON:  No.

11           THE COURT:  Okay.  Why don't we do this:  Because I'm

12  not in a position to know when all that can be done, I'm going

13  to give -- I'm going to set these dates so that we can track it.

14  And what I would ask you to do is contact probation -- there

01:58:26  15  will be someone assigned to write this report -- and tell them

16  that I have approved an expedited sentencing subject to their

17  ability to get it expedited.

18           MR. MEDRANO:  Yes, your Honor.

19           THE COURT:  And then, probation can notify Stacie; and

01:58:43  20  we'll set a sentencing date before the one I'm fixing to give

21  her.  This report I talked about, typically, using the time

22  frame that we follow, would be disclosed to counsel by August

23  the 31st, about six weeks from now; and then, you'd have roughly

24  14 days to file any objections.  That would be by September

01:59:07  25  14th.  And I would be setting you for sentencing about a month

1    later on October 17th.

2              And so, that's the date I'm going to give you

3    right now for your sentencing is October 17th --

4              At what time?

01:59:19   5    THE CASE MANAGER:  At 2:30, your Honor.

6    THE COURT:  -- at 2:30 p.m.  Now, we, hopefully, will

7    be able to move that up and maybe get you sentenced in half that

8    time.  It takes awhile to prepare one of these reports, and I'm

9    not going to sentence you until I have it because of the nature

01:59:33  10    of this case and everything, make sure I have all the

11    information.  But the probation officer, I'm sure, will do what

12    they can to get it prepared expeditiously.

13              MR. MEDRANO:  Thank you, your Honor.

14              THE COURT:  Okay.

01:59:41  15              Today is the 19th, isn't it?

16              THE CASE MANAGER:  Yes, Judge.

17              MR. MEDRANO:  Yes, sir.

18              THE COURT:  Very well.

19              Anything further we need to address?

01:59:49  20              MS. HAMPTON:  I believe Mr. Medrano has something.

21              MR. MEDRANO:  Your Honor, if I may, Judge, I ask the

22    Court to go ahead and please consider the document that I

23    previously have shown counsel for the Government.  This is a

24    motion by us, Judge, to ask the Court to issue an order for the

02:00:06  25    parole entry of witnesses which, basically, are her three adult

1  children and her sister so that they can be interviewed by

2  probation to try to verify the information that, obviously,

3  she's going to be given them.

4           She has no relatives here in the US, Judge, that

02:00:21  5  probation can go ahead and consult with to try to go ahead and

6  verify her education, her background, her employment except for

7  her sister and her three adult children.

8           Also, Judge, I will tell the Court all four of

9  them used to have tourist visas; but because of the arrest of my

02:00:41  10  client, the Federal Government has chosen to go ahead and

11  unilaterally revoke their visas.  And so, it's been five months

12  now, Judge, five months, since my client has seen any of her

13  children; and so, I ask the Court to go ahead -- and the Court

14  will notice the parole of these four individuals is three days

02:01:02  15  only and to be able to travel up to Corpus Christi to be

16  interviewed by the probation office.

17           And I need that order, Judge, because of the fact

18  that, obviously, they have to go through the checkpoint; and

19  they're going to be asked, "Well, let me see why you're coming

02:01:16  20  through here."

21           "Well, we have a Court order to go and appear at

22  probation to be interviewed" in order to go ahead and assist me

23  and my client in preparing the report for the Court.

24           THE COURT:  I've never done one of these.

02:01:27  25           MR. MEDRANO:  Yes, your Honor.

1          THE COURT:  I mean, it's highly unusual.  You know, to

2     me, it's -- I can sign an order.  I don't know to what effect it

3     will get them through a checkpoint.  That would be my concern.

4     I don't know -- usually, in order to come to the United States

02:01:45   5     on a visa or otherwise, you have to have some sort of document

6     issued by Immigration authorities, not just a District Judge

7     sitting somewhere.

8               So, I don't --

9               Ms. Hampton, do you have any familiarity with

02:01:58   10     what issues might arise if I -- first of all, I guess let me ask

11     you:  Do you oppose this?

12          MS. HAMPTON:  I don't -- I think that the Government

13     can facilitate this happening.  I think that we have every

14     agency in the Federal Government working on this case.  So,

02:02:17   15     there's HSI agents that could sponsor these four individuals on

16     parole status to bring them into the US.

17               I think the order -- I would take the order very

18     generally written as directing me to do this, to get this done.

19     I don't know that the order itself would be something that they

02:02:30   20     could show the port of entry.

21          THE COURT:  Okay.  Let me read the order.  I was just

22     going by looking at the motion.  Let me see what he's written

23     here.

24          MR. MEDRANO:  Yes, sir.

02:02:50   25          THE COURT:  Well, yeah, I could sign the order.  I

 1  don't know that it would achieve what you want; but as

 2  Ms. Hampton said, she can probably make it happen.

 3          But the issue that I think would be of concern

 4  are the dates.  You know, you want them to come here for the

 5  purpose of being interviewed by probation on -- in five days.  I

 6  don't know that probation would be available to do those

 7  interviews.  You know, it may be you need to check with

 8  probation first to set up those appointments and make sure that

 9  they fit because they're going to be only allowed in here for

10  these specific dates.

11          MR. MEDRANO:  Right, exactly.

12          Well, I could always file a motion to amend, your

13  Honor, if probation can't go ahead and meet with them for those

14  dates.  But if we have an order written, it will give me the

15  impetus to get this done.

16          MS. HAMPTON:  May I make a suggestion?

17          THE COURT:  Sure, go ahead.

18          MS. HAMPTON:  Can we just -- can we do this without

19  the dates, just leaving it open-ended so we have some

20  flexibility to bring them in when HSI is able to -- because

21  there's certain paperwork involved with paroling the four

22  individuals --

23          MR. MEDRANO:  That's fine, your Honor.

24          MS. HAMPTON:  -- and then, also, probation's schedule.

25  If the Court did all that, we can make it happen.  But you're

1  right, your Honor, it has to be a beginning and an end date on

2  parole documentation.

3  　　　　　MR. MEDRANO:  I've got no objection to that, your

4  Honor.

02:04:22  5  　　　　　THE COURT:  How about me just saying, "be interviewed

6  by US probation, consult with the Defendant and defense counsel

7  on dates to be determined by probation"?

8  　　　　　MS. HAMPTON:  That's perfect.

9  　　　　　MR. MEDRANO:  Your Honor, there's a typo on the order.

02:04:57  10  On Number 4, it's Marcia Alejandra Roca de Meyer instead of

11  Maria.

12  　　　　　THE COURT:  M-a -- how do you spell it?

13  　　　　　MR. MEDRANO:  M-a-r-c-i-a.

14  　　　　　THE COURT:  M-a-r-c-i-a.

02:05:07  15  　　　　　MR. MEDRANO:  And the date of birth is 1966 for that

16  lady.  I made her a lot younger.

17  　　　　　THE COURT:  You sure did.  19 --

18  　　　　　MR. MEDRANO:  '66, Judge.

19  　　　　　THE COURT:  -- 66.

02:05:19  20  　　　　　MR. MEDRANO:  Yes, your Honor, I apologize.

21  　　　　　THE COURT:  That's okay.

22  　　　　　MR. MEDRANO:  I'll inform the Court I've used this

23  twice on cases that I had up in the Eastern District.  And what

24  I usually do is to -- took a copy of the order to the port of

02:05:34  25  entry director before I bring the individuals across, and

1   they'll verify the authenticity of the order.  And then, as a

2   courtesy, in deference to the Court, they'll allow the

3   individuals to come across.

4            THE COURT:  Okay, okay.  Like I say, I've just never

02:06:03  5   done it.

6            MR. MEDRANO:  Yes, your Honor.

7            THE COURT:  Okay.  I have signed the order as amended,

8   and we'll see if it can happen.

9            MR. MEDRANO:  Yes, your Honor.

02:06:09  10             One last thing, Judge.

11            THE COURT:  Yes, sir.

12            MR. MEDRANO:  The marshals were kind enough to go

13   ahead and house my client in Falfurrias which is a lot closer

14   for me to be able to go ahead and consult with her.

02:06:21  15            THE COURT:  Okay.

16            MR. MEDRANO:  I know they have to transfer her to

17   different places so they can go ahead and get her up here today.

18   We understand that, Judge; but I ask the Court to ask the

19   marshals, if at all possible, can she please be transferred back

02:06:28  20   to Falfurrias.  That's where all her commissary money is, her

21   books, and everything like that.

22            THE COURT:  Is that going to happen?

23            MARSHAL 1:  No, your Honor.

24            THE COURT:  What's going to happen?  Tell me.

02:06:38  25            MARSHAL 1:  She's in DeWitt County right now which is

1    where she will stay.

2           THE COURT:  Until?

3           MARSHAL 1:  Until the court proceeding for sentencing.

4    At this point, Falfurrias, that area does not transport to us;

02:06:53  5    therefore, we only have the jails right around here; and DeWitt

6    County is one of them.  So, she'll stay in DeWitt County.

7           THE COURT:  Can you get her stuff up here to DeWitt

8    County?

9           MARSHAL 1:  It should be -- I'll have to talk to

02:07:05 10   DeWitt County, but I would think that they'll be able to get her

11   belongings up here.

12          THE COURT:  See if you can do that.  If there's any

13   problems with it, let us know and let Mr. Medrano know.

14          MARSHAL 1:  Yes, sir.

02:07:13 15          MR. MEDRANO:  Your Honor, may I address the Court.

16          THE COURT:  Sure, yes.

17          MR. MEDRANO:  Judge, the reason why we're here is

18   because, obviously, to accommodate the Court's schedule -- this

19   is a Corpus Christi Division case.

02:07:19 20          THE COURT:  Yeah, right.

21          MR. MEDRANO:  And so, I'm assuming that the sentencing

22   is going to take place in Corpus Christi.

23          THE COURT:  That's true.  That's true.  Yeah, that's

24   true.

02:07:28 25          MR. MEDRANO:  And so, your Honor, I'd ask the Court --

1          THE COURT:  Yeah.  This was an unusual setting --

2          MR. MEDRANO:  Yes, your Honor.

3          THE COURT:  -- for today for special reasons.

4          MR. MEDRANO:  Right.

02:07:34  5          THE COURT:  Sentencing will occur in Corpus Christi.

6                      And what will that do to you then as far as would

7    you move her to a unit closer to Corpus?

8          MARSHAL 1:  Well, Corpus Christi uses DeWitt County

9    jail, too.  But what we can do is we can contact Corpus Christi

02:07:52 10   Division and see if they plan on keeping her in DeWitt County or

11   if they're going to send her back over to Falfurrias.

12         MARSHAL 2:  Because we're rather limited right now on

13   where we can house people because a lot of our facilities are

14   full.  So, it just depends who's taking females and if it's

02:08:09 15   possible.

16         THE COURT:  Do this:  Contact them and see -- make a

17   request that they take her back to Falfurrias.

18         MARSHAL 1:  Yes, sir.

19         THE COURT:  Because it will be a Corpus Christi

02:08:20 20   sentencing, it won't be here.

21         MARSHAL 1:  Yes, sir.

22         THE COURT:  Okay.  All right.

23         MR. MEDRANO:  Thank you, your Honor.

24         THE COURT:  Okay.  All right.

02:08:22 25                Anything else?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          MR. MEDRANO:  That's all we have, your Honor.

2          THE DEFENDANT:  Thank you, your Honor.

3          THE COURT:  All right.

4       (Proceedings concluded at 2:08 p.m.)

5

6

7

8

9                 C E R T I F I C A T E

10

11      I certify that the foregoing is a correct transcript

12  from the record of proceedings in the above-entitled matter, to

13  the best of my ability.

14

15  By: /s/Gayle L. Dye _____      _09-13-2017 _____

16          Gayle L. Dye, CSR, RDR, CRR       Date

17

18

19

20

21

22

23

24

25

                Gayle Dye, CSR, RDR, CRR - 713.250.5582